IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| CHRISTIAN HOLM and ) | |
| DANIELLE HOLM, ) | |
| ) | |
| **Petitioners,** ) | |
| ) | |
| v. ) | Case No: |
| ) | **1:16-cv-02036-MHH-SGC** |
| LUTHER STRANGE, ) | |
| **Attorney General of the State of,** ) | |
| Alabama, ) | |
| ) | |
| **Respondent.** ) | |

## MEMORANDUM OPINION

In their continuing effort to compel the Alabama Department of Human Resources (DHR) to return their infant son to them, plaintiffs Christian and Danielle Holm filed an emergency petition for a writ of habeas corpus in this court on December 19, 2016. According to the habeas petition and the documents that the Holms supplied in support of their petition, DHR took their infant from them in the hospital on October 11, 2016, one day after he was born. The Holms explain that since then, they have tried to no avail to obtain a remedy through the state court system. The Holms allege that the Attorney General of the State of Alabama and the other state actors involved in this case have violated Baby Holm's constitutional right to due process, and they seek relief in federal court pursuant to 28 U.S.C. §

1

2254.  To better explain the posture of this case, the Court sets forth the details that appear in the record before it.

## I.  FACTUAL BACKGROUND

Mrs. Holm alleges that she is a direct descendant of the Native American Mik-Maq Indian Tribe.  (Doc. 1, ¶ 14).  According to the Holms, the Mik-Maq Indian Tribe is federally recognized.  (Doc. 1, ¶ 14).

On October 10, 2016, Ms. Holm gave birth to a baby boy at Anniston Regional Medical Hospital.  (Doc. 1-2, p. 3; *see also* Doc. 1, pp. 1, 8–9).  The Holms allege that they initially "wanted to birth out in nature, and after two days of labor, we decided to err on the side of safety to protect the baby's health and allow Hospital birth."  (Doc. 1, ¶ 51).

The Holms assert that Baby Holm is a healthy baby boy.  (Doc. 1, p. 1; Doc. 1-1, ¶ 3).  They contend that their infant son never has been "in any medical neglect, nor any medical harm, nor any contact with anyone who threatened to harm him or any other minor, nor any contact with anyone who has ever been adjudicated as a potential danger to him."  (Doc. 1, ¶ 25).

Mr. and Mrs. Holm allege that it is customary for Native Americans to have some time with their babies before naming them.  The Holms contend that they chose to exercise this "cultural and religious right protected by the First

Amendment" and chose not to name their infant son immediately. (Doc. 1, ¶¶ 13–14). But not long after their son's birth, the Holms allege, hospital staff at Anniston Regional tried to force them to name their baby. (Doc. 1, ¶ 16). In addition, members of the hospital staff tried to "induce and coerce" the Holms into applying for a Social Security Number for Baby Holm. (Doc. 1, ¶ 16). The Holms contend that the Social Security Administration's "Enumeration-at-Birth Program" is voluntary, and they did not have to apply for a Social Security Number for their newborn son. (Doc. 1, ¶¶ 16–18). The Holms assert that someone at the hospital called the Anniston Police Department to report the Holms' failure to apply for a Social Security Number for Baby Holm.

While Baby Holm was with his mother in the hospital on October 11, 2016 at 4:30 p.m., Anniston police officers took Baby Holm from Mrs. Holm and placed him in DHR's custody. (Doc. 1-2, p. 3; Doc. 1-1, ¶¶ 16, 19). According to the Holms, the officers and hospital staff physically restrained and threatened Mrs. Holm as the officers left the hospital with Baby Holm. (Doc. 1-1, ¶ 16).

It is not clear from the record when DHR obtained a state court order authorizing the agency to take custody of Baby Holm. Although the state court order contains a handwritten notation that indicates that the state court judge signed the order on October 11, 2016 at 3:20 p.m. (Doc. 1-2, p. 2), according to another

handwritten note, DHR did not file its petition for custody with the state circuit court until 5:18 p.m. (Doc. 1-2, p. 3), and the state court order was filed electronically in the state clerk's office at 5:24 p.m. (Doc. 1-2, p. 2). The DHR petition states that "the child has been subjected to abuse or neglect," that Mr. and Mrs. Holm were "unable or unwilling to discharge their responsibilities for the child," and that Baby Holm was "in need of the care and protection of the state" because Mr. and Mrs. Holm were homeless, had lost custody of another child, and were possibly involved in a drug cartel. (Doc. 1-2, p. 3).

The Holms contend that state officials have no reason to believe that they (the Holms) "would potentially . . . harm or neglect" Baby Holm. (Doc. 1-1, ¶ 9). The Holms attest that they have no criminal history; there are no pending warrants for their arrest; and they are not drug users or drug addicts. (Doc. 1-1 ¶¶ 8–11). The Holms contend that they simply wish to raise their child in natural surroundings as they see fit. (Doc. 1, ¶ 49). For religious and cultural reasons, the Holms prefer a secluded life. (Doc. 1, ¶ 51). Originally, the Holms planned to bring their baby home to live with them in a tent at Cheaha State Park in Alabama. (Doc. 1, ¶ 48). According to the Holms, in the tent, they had "sufficient cold-weather gear, camp bedding, . . . cold weather clothing, . . . [and] plenty of baby clothing and diapers." (Doc. 1, ¶ 48). And then, on the day Baby Holm was born, a friend gave the Holms

a camper which the Holms have placed on private property. (Doc. 1, ¶¶ 49, 52).

In the order authorizing DHR to take custody of Baby Holm, the state circuit court set a hearing in the state court case on October 13, 2016. Mr. and Mrs. Holm report that they attended that hearing and every other proceeding that has been set in the state circuit court action. Counsel for DHR has explained that the original presiding judge began a trial in the state court proceedings on December 4, 2016, and the trial continued on December 15, 2016 and December 20, 2016. On December 20, 2016, the presiding judge recused from the case. Counsel for DHR has indicated that no judge was assigned to the case as of December 21, 2016. Thus, there is no immediate end in sight in the state court proceedings. In their habeas petition, Mr. and Mrs. Holm allege that they believe that they "have no further ability, under any State of Alabama law, to raise, by any available procedure, the question presented herein in any State of Alabama court" (Doc. 1, ¶ 26), but Mr. Holm concedes that he and his wife have not filed a request for relief in one of Alabama's appellate courts (namely either the Alabama Court of Civil Appeals or the Alabama Supreme Court).

## II.   DISCUSSION

Under 28 U.S.C. § 2254, a "person in custody pursuant to a judgment of a State court" may seek a writ of habeas corpus from a federal district court "on the

ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). To be "in custody" within the meaning of § 2254, the United States Supreme Court has historically required that a petitioner suffer "substantial restraints" on his liberty "as a result of a state-court criminal conviction." *Lehman v. Lycoming Cty. Children's Servs. Agency*, 458 U.S. 502, 510 (1982). The typical habeas corpus petitioner is a prisoner who wishes to challenge his conviction. *See id.* at 508. In a handful of cases, the United States Supreme Court has extended the remedy to petitioners who were not "actually in the physical custody of the State." *Id.* However, the petitioners in each of these cases, like prisoners, "suffered substantial restraints not shared by the public generally." *Id.* at 510.

Consistent with its view that § 2254 requires a deprivation of liberty, the United States Supreme Court has never held that habeas corpus may be invoked to challenge state-court decisions regarding parental rights or child custody. *See Lehman*, 458 U.S. at 510–11 (explaining that a child who is seized pursuant to a state court order and placed in a foster home is "not in the 'custody' of the State in the sense in which that term has been used by this Court in determining the availability of the writ of habeas corpus"). Such children, though separated from their parents, "are not prisoners," and "suffer no unusual restraints not imposed on other children."

6

*Lehman*, 458 U.S. at 511.  Thus, the Supreme Court has instructed, "extending [habeas corpus] to challenges to state child custody decisions—challenges based on alleged constitutional defects collateral to the actual custody decision—would be an unprecedented expansion of the jurisdiction of the lower federal courts."  *Id.* at 512.

>According to the Supreme Court in *Lehman*:
>
>The considerations in a child-custody case are quite different from those present in any prior case in which this Court has sustained federal-court jurisdiction under § 2254.  The federal writ of habeas corpus, representing as it does a profound interference with state judicial systems and the finality of state decisions, should be reserved for those instances in which the federal interest in individual liberty is so strong that it outweighs federalism and finality concerns.

*Id.* at 515–16.  There is nothing in the Holms' emergency petition or the attachments to it that suggest that extreme circumstances exist in the state court custody proceedings that would create a basis for an exception to the broad general rule that the Supreme Court stated in *Lehman*.[1]  Accordingly, to the extent that the Holms seek relief in this federal action under § 2254, the Court denies the Holms' petition.[2]

---

[1] In his dissent in *Lehman*, Justice Blackmun suggested that, under "extreme circumstances," a federal court may issue a writ of habeas corpus to "secure a child's release from state custody" if, for example, the child is subjected to conditions constituting a "struggle for liberty by one imprisoned under the aegis of the state."  *Lehman v. Lycoming Cty. Children's Servs. Agency*, 458 U.S. 502, 519 n. 5 (1982) (Blackmun, J., dissenting).  The Holms have not alleged that their child has suffered any such restraints on his liberty while in state custody.

[2] In addition to requiring a deprivation of liberty, § 2254 states that "[a]n application for a writ of habeas corpus . . . shall not be granted unless it appears that . . . the applicant has exhausted the

The Court will not dismiss the action yet because it will consider whether there is any alternative basis for federal jurisdiction. The Court has conducted initial research into the jurisdictional implications of Mrs. Holm's contention that she and her son are descendants of the federally-recognized Mik-Maq Native American tribe. (Doc. 1, ¶ 14). To date, the Court has located no authority which would, as a result of such status, provide a basis for the exercise of federal jurisdiction. Even if the Court were to treat the Holms' habeas petition as a § 1983 action, the Court strongly doubts that there would be an exception to the *Rooker-Feldman* doctrine that would permit a federal court to act while state court proceedings are ongoing. As the Supreme Court has stated, "federal courts consistently have shown special solicitude for state interests in the field of family [] arrangements." *Lehman*, 458 U.S. at 512 (citation and internal quotation marks omitted).[3]

---

remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1). An applicant who "has the right, under the law of the State to raise, by any available procedure, the question presented[,]" has not exhausted his state-court remedies. *Id.* at § 2254(c). Because the Holms are still in the process of litigating their claims in state court and they may present their due process and First Amendment arguments in state court, it does not appear that they have exhausted their state-court remedies as § 2254 requires. Thus, even if the Holms had alleged that the state subjected their baby to significant restraints on his liberty, the standard for habeas relief would compel the Court to stay this habeas action until the Holms exhausted their state remedies. To exhaust their state remedies, the Holms would have to seek appellate relief, either through an appeal of a final judgment pursuant to Rule 4 of the Alabama Rules of Appellate Procedure or through an extraordinary writ pursuant to Rule 21 of the Alabama Rules of Appellate Procedure.

[3] The Court decided to issue this opinion before resolving conclusively all of the jurisdictional issues to give the Holms as much information as possible before the holiday break.

## V. CONCLUSION

The Court sincerely wishes there were a Christmas miracle that the Court could perform to resolve this child custody matter once and for all. The Court heard the pain in the voices of Mr. and Mrs. Holm and recognizes the concern for Baby Holm of everyone involved. This would be a deeply sad situation at any time, but it feels particularly wrenching during the holidays. The Court wishes it could do more, but the Holms' best option is to continue their efforts to exhaust their state court remedies.

**DONE** and **ORDERED** this December 22, 2016.

_____
**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE